And we'll move to our fourth argument of the morning, Mark Petersen v. Stefanie Pedersen, appeal number 24-1206. Mr. Stern, nice to see you. Good morning. Thank you very much. Good morning to you. And I represent Mark Petersen, who's the appellant. This is a case concerning an arrest and a blood draw that occurred in 2018. And the court trial judge granted summary judgment. I think the main questions here is whether or not there was any probable cause with respect to whether or not my client operated a vehicle pursuant to Wisconsin law. That requires a physical manipulation or activation of any control of the vehicle. I relates to the order for a blood draw that, in our view, is based on total conclusions, not facts, not circumstances. And nowhere, at least in our research, did we see that a person changing a tire when there was no investigation concerning the pathway of the vehicle supposedly was referred to as a crash. But actually, there was a few branches there. None of the tires weren't checked to match. There was nothing done to feel whether the engine had been running, which there was a number of cases, state and federal, that say that if a person's, you know, behind a vehicle, and the vehicle is warm, having been driven, or a key is turned, or the car is running, that that could be operation of a vehicle. And with respect to the probable cause issue, the appellant doesn't see where they dealt with the who, what, where, when, why and how, which are required underlying facts and circumstances, which would persuade a neutral and detached magistrate, I'm using it all the case, but it's still the law, that there's probable cause that my client operated a vehicle. I think it's clear there was no driving. No one saw him drive. The neighbors involved never saw him drive. No one really saw him operate. And there is no question that for purposes of the argument, I wouldn't dispute the fact that my client was intoxicated. He was. Was he difficult? Yes, he was difficult. But the burden is really on on the state to determine whether or not there is probable cause. And in the depositions of Deputy Peterson, there was nothing different in that testimony than was in the testimony before the circuit court. I think one of the harder I think one of the harder facts that you have on your hands here is Deputy Peterson took a took a step in addition to observing what she could and talking to your client. And that was there were a few people there referred to as bystanders in the briefs. I don't know where they live or why they were there or anything, but they're referred to as bystanders. And Deputy Peterson talked to them and asked them if they had seen anyone else in the car. And they had they said no, we haven't seen anybody else around the car that way. Okay. And so it's a it's a step of diligence on her part trying to figure that trying to figure it all out. And doesn't that have that fact that she did that and got that response doesn't that have to be thrown into the mix and the totality of the Well, if I can with due respect, I correct the court. What occurred is this was a semi residential county area near Nina, Wisconsin, right? Okay. And the the residents came out basically said, we didn't see the Mark Peterson drive. We didn't see him in the car. We didn't see him doing anything particular. No one actually saw this crash. And if you could even call it a crash. So what I would say to the court, in all honesty, is that that's not the way the district court though. Mr. Stern characterized it, the district court said, the defendant, meaning Deputy Peterson, I'm just I'm quoting directly from the district court. Okay. Quote, asked the three bystanders, if plaintiff was the only one in the car, the three bystanders confirmed that the plaintiff was the only person they had seen around the vehicle. Okay. And I would answer the question. I don't agree with the court's characterization of that, for several reasons. Number one, no one saw him behind or in the car at all, even in the car. And that's substantiated by the deposition of Deputy Peterson, and my client's deposition. And even the affidavit that was submitted to the circuit court that my client was not seen whatsoever in the car. And the neighbors didn't see him in the car. What the evidence shows is that the there was a quote, crash that alerted the neighbor's attention. By the time the police got there, they came out. And yes, the question was asked, did you see anyone near the car other than Mark Peterson? And the answer was no. So that's the full fact, whether it's good or bad. That's the facts of the case. We appreciate it. You noted you wanted to reserve three minutes for rebuttal. It's up to you. No, I don't think so. I will continue to keep going. The second question deals with a search in Wisconsin. You have to put an end under federal law, you have to get a search warrant to draw blood. And the search warrant was based upon an affidavit that simply concludes that my client was operating a motor vehicle, and that my client was identified. And by prior contacts in that evening, and then somehow or other, crashed his vehicle into a yard, a yard. These are totally conclusions. And they're not accurate. They're misstated. And even with, if you look at the telephone colloquy between the circuit court judge, there was no evidence in that colloquy, that there was any evidence that the defendant was operating. Operating has a very specific meaning. In Wisconsin law, you have to manipulate or activate the control of the vehicle to put the car in motion. I'm virtually quoting it. And there's nothing to indicate that by circumstantial or direct evidence that he did that. Yes, he was there. But then the question turns around to, is there probable cause to believe that he was a driver, that he was involved in a crash, and that he therefore was responsible? So both two types of problems. First of all, probable cause to arrest. Secondly, probable cause to order a blood draw. Thank you,  Mr. Stern, you're quite welcome. You got some rebuttal time left. We'll hear from Ms. Mills. Good morning, Your Honors, or afternoon now. May it please the court. Opposing counsel is interpreting the concept of probable cause in a far too narrow way. This is a case where circumstantial evidence provided the probable cause that Deputy Peterson needed for the arrest of Mr. Peterson. Clear under Wisconsin law, circumstantial evidence is sufficient when dealing with an OWI charge for both the element of operation and the element of intoxication. So it was undisputed in the district court that dispatch told Deputy Peterson she was being dispatched to a crash, whether that's ultimately what happened, a vehicle hit something, she arrives at the scene, it doesn't appear the vehicle has collided with anything, but it's clear to her it did not simply travel off the road in a controlled manner. It's a large front yard, tire marks all the way across the yard to where the vehicle ended up. There's nobody else on scene. As you mentioned, Judge Scudder, she did speak to the folks who lived at this house, and they said, this is the only person we have seen near the car. It is undisputed. No one ever stated, we saw this gentleman in the car, but there's no one else on the scene. And this is a fairly rural area. It's actually kind of questionable. How did he get here? That led to Deputy Peterson asking some logical questions. She didn't have a duty to undertake some forensic analysis by feeling the hood of the car or matching tire patterns and tire tracks. Instead, she just asked the logical questions. Mr. Peterson, how did you get here? He could not provide any kind of rational answer. She ran the plates of the car. It was clearly registered to Mr. Peterson. She knew from the dispatcher before she placed him under arrest that he had prior OWIs and that he had limitations on his license. And as opposing counsel states, he does not oppose or dispute the fact that his client was drunk. It was pretty obvious to Deputy Peterson as an A-ride expert that this gentleman is drunk. So when we're looking at the operation and intoxication, it's clear he's intoxicated. The only question remaining is operation. Deputy Peterson did everything possible to make a determination of other factors. What else might explain this? She gave Mr. Peterson an opportunity to explain and he didn't. She also had many prior contacts with Mr. Peterson. This is a relatively smaller county. It's Winnebago County, Wisconsin. She was familiar with his family. She knew his mom. She knew that he was estranged from his daughter. So the only thing that he did say something about his daughter, she used her knowledge, past interactions with this family and knew this gentleman has been estranged from his daughter for many years. This doesn't make sense. Why would she be driving his car? She came to the only logical conclusion. There's nobody else around unless there's somebody hiding in the bushes, which there would be no evidence to jump to that conclusion. This is the gentleman who was driving the car. He was operating it and he's clearly intoxicated. There's no other reasonable explanation for this. She had no obligation once she made that determination to do anything more in terms of feeling the hood or tracking down other witnesses. But she even did that as she was driving to the hospital for the blood draw. She called his mom because she knew who his mom was and asked about this daughter driving the car. And she confirmed what Deputy Peterson had already suspected and had based her probable cause determination on. This gentleman has had no contact with his daughter. That doesn't make any sense. She also, when she did the path search, more information is coming forward that's corroborating exactly the reasonable conclusion she had made. He's got lug nuts in his pocket. He was doing something with the car. There's nobody else around. This all only further supports her conclusion that this gentleman was operating the vehicle. And then switching to the blood draw, I do have to correct opposing counsel. And there have sort of been references throughout this to an affidavit. The written document that Deputy Peterson submitted was a probable cause statement for his arrest. It was not an affidavit submitted for the search warrant to draw blood. That was solely based on her conversation with Judge Seifert, which is all in the record. We've got the transcript of it. And as much as there's been argument about whether, you know, was this accurate? Was she fabricating? Opposing counsel has never once pointed out anything in that conversation between Judge Seifert and Judge Peterson that wasn't accurate. So Ms. Mills, I'm glad you're saying this is something I couldn't figure out very well. The separate report that's referred to that separate report has nothing at all to do with the blood draw and only relates to the arrest. That's correct. Okay. To your knowledge, is there any requirement in under Wisconsin law by statute or regulation or otherwise, that requires a law enforcement officer after receiving a telephonic warrant to document the probable cause basis on which she or he received the warrant? No, there is actually, and I'm not sure where in the record it is because ultimately the complaint that originally was filed was filed with attachments. One of those attachments was some court documents. I think it was at the record 1-1. However, then a subsequent complaint was filed with different attachments and some of them changed. And so the operative complaint does not attach those same court documents. But at some point in time, somewhere in the record, there are court documents showing that she, Deputy Peterson, did complete a form confirming her phone call with Judge Seifert and that's signed off by Judge Seifert. The document, this affidavit with this handwritten statement, that's a completely separate document that has to do with the probable cause for arrest. Yeah, the reason I ask that is from what I could discern, it seems that the transcript of the call between the law enforcement officer and the judge serves as the record, the factual record, to evaluate any challenge to the issuance of the warrant. Correct. For the blood draw, absolutely. The warrant was issued based solely on that phone call. Judge Seifert concludes it by clearly stating, I find probable cause for the blood draw. She's not talking about the arrest. She's blood draw and that alone. Ultimately, any argument about the validity of that warrant for the blood draw, as you stated, comes back to this testimony in the record between Deputy Peterson and the judge. And at no point in time has opposing counsel pointed out anything that was incorrect, false, unreasonable. And I will point out, she was very clear in speaking to the judge when the judge asked, well, did anybody see him driving the vehicle? She said, no, nobody saw it. But and then she went on and described the fact that the bystander said he's the only guy around. And then she went through her processes. At no point did even Judge Seifert say, hmm, maybe you should go back. This doesn't seem right. Did you go through other steps? It was a pretty clear cut case for the blood draw. It's certainly the same basis establishes probable cause for the arrest. I know that there are some other arguments that were raised in opposing counsel's reply brief, one of them being the concept of preclusion. It's our position that this has been waived. It was never presented in the district court. So this is not something that should in any way cause any pause in this case. But even if the court were to say, well, wait a minute, why would we reach a different conclusion than the circuit court? And I have different thoughts on why the circuit court ultimately reached the conclusion it did. But it wouldn't make a difference in this case because we have qualified immunity. Ultimately, if Deputy Peterson was mistaken and she didn't actually have probable cause for the arrest or the blood draw, she was reasonable in believing that she did. There's no case anywhere in Wisconsin or the Seventh Circuit that says that eyewitness testimony or reports are required to meet the elements of operation or intoxication. And all she had to know with all those facts was that they, to her, suggested the probability of criminal activity. She had no obligation to take it a step further and confirm this is absolutely our guy, Mark Peterson. He's the one beyond a reasonable doubt. That's a question for the criminal trial after the fact. If anyone has any questions. Thank you, Your Honors. Ms. Mills, thanks to you. Mr. Stern, anything further? I don't agree with counsel respectfully with respect to the circuit court's decision after a full evidentiary hearing on July 29th of 2021. This was raised in the complaint. This was answered paragraph 28, 29 and 30 of the complaint and was answered in the affirmative that that's what happened in the circuit court. And I think that we did not raise that in the brief, mainly because it was agreed to. It was admitted that this was the effect of the circuit court's decision. And one other thing is that in the case, when there was a 9-1-1 or dispatch report, it said one person was driving, quote, and the other one changing a tire. That's from the hearing of July on page three of July 29th of 2021. Thank you, Judge. Mr. Stern, you're quite welcome. Ms. Mills, thanks to you. We'll take the appeal under advisement.